**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| JULIE A. SU,  Acting Secretary of Labor, United States Department of Labor,[1] *Plaintiff*,  v.  CARECO SHORELINE, INC.,d/b/a CARECO and HELGA PFANNER, Individually, *Defendant.* | No. 3:21-cv-00401 (VAB) |

**RULING AND ORDER ON MOTION FOR PARTIAL SUMMARY JUDGMENT**

The Acting Secretary of the United States Department of Labor, Julie Su ("Secretary" or "Plaintiff") has sued CareCo Shoreline, Inc. dba CareCo ("CareCo") and Helga Pfanner ("Ms. Pfanner") (collectively, "Defendants") for failing to pay their employees for all overtime hours worked and failing to adequately and accurately record all hours their employees worked in violation of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq. (the "FLSA"). *See* Complaint, ECF No. 1 (Mar. 23, 2021) ("Compl.").

Secretary has moved for partial summary judgment on the following issues: (1) CareCo's alleged violations of the overtime provisions of the FLSA, based on CareCo's own records; (2) CareCo's alleged liability for liquidated damages on any of the back wages later determined to be owed, based on CareCo's own records; and (3) the alleged willfulness of CareCo's FLSA overtime violations. Pl.'s Mot. for Summ. J., ECF No. 22 (Apr. 01, 2022); Pl.'s Mem. of Law in Supp. of Mot. for Partial Summ. J., ECF No. 22-1 (Apr. 01, 2022) ("Pl. Mem").

---

[1] Under Rule 25(d) of the Federal Rules of Civil Procedure, "when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the office is pending . . . [t]he officer's successor is automatically substituted as a party." Because Martin Walsh is no longer the Secretary of Labor, his current successor, Acting Secretary of Labor Julie A. Su, is automatically substituted as the proper Plaintiff in this case. The Clerk of Court is respectfully directed to amend the caption in this case on the docket accordingly.

For the following reasons, Plaintiff's partial motion for summary judgment is **GRANTED** as to (1) whether CareCo violated the FLSA's overtime provisions of the FLSA, based on CareCo's own records; (2) whether CareCo is liable for liquidated damages on any of the back wages later determined to be owed, based on CareCo's own records; and (3) whether CareCo's FLSA overtime violations were willful**.**

## I.     FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Allegations

Defendant CareCo Shoreline, Inc. ("CareCo") is a corporation located in Waterford, Connecticut that provides non-medical domestic care-giving services to the elderly in their homes. Defs.' Resp. to Secretary of Labor's Local Rule 56(a)1 Statement Of Undisputed Material Facts ¶ 1, ECF No. 27 (May 2, 2022) ("Defs.' SMF"); Defs.' Answer to First Amended Complaint ¶ 4, (ECF No. 13 (May 14, 2021) ("Defs.' Answer"). The services include the provision of live-in employees who stay overnight at clients' homes and provide supervision, care, and companionship. *Id.*

CareCo provides services either through placing employees who live in clients' homes (known as live-in employees) or having employees visit clients for scheduled periods of time. Defs.' SMF at 3; Declaration of Kelly Bosco ¶ 4., Attachment A, ECF 23-1 (April 01, 2022) ("Bosco Decl."). The company maintains an office in Waterford, Connecticut, which performs scheduling, payroll, billing, and other support functions, *id.* ¶3, and has 145 live-in employees, *id.* ¶¶ 4-5; Bosco Decl. ¶ 4; Defs.' Answer ¶¶ 9, 16.

CareCo has had annual gross sales volume greater than $500.000.00 in 2016, 2017, 2018 and 2019. Defs' SMF ¶5; Defs.' Answer ¶ 18. The company utilizes out-of-state vendors in carrying on the business, including Deluxe Corp. of Minnesota, which provides CareCo business

checks and envelopes. Defs.' SMF ¶ 6; Bosco Decl. ¶ 5.

Ms. Pfanner is the sole owner and Chief Executive Officer of CareCo. Defs.' SMF ¶ 8; Defs.' Answer ¶ 10. She has been the CEO of CareCo, since approximately 2014. Defs.' SMF ¶ 8; January 11, 2022 Deposition of Helga Pfanner at 11:12-14; 12:13-14, Attachment B, ECF No.24-1 (April 01, 2022) ("Pfanner Depo.").

CareCo and Ms. Pfanner engaged in the related activities of providing personal care services through unified operation and common control, as Ms. Pfanner is the sole owner of CareCo and controlled its operations by, among other things, setting pay rates, establishing work rules and policies for all aspects of the business, overseeing the business' finances, making sure employees were paid in accordance with federal law, and having authority to hire and fire office employees. Defs.' SMF  ¶9; Defs.' Answer ¶ 10; Pfanner Depo. 15:9-18; 18:7-8; 18:19 19:5; 19:9-11; 20:17–21:1; 22:6-15; 22:19–23:15; 34:19–35:4. CareCo denies that Ms. Pfanner was actively involved with the business in 2018 and 2019 when she was ill. Affidavit of Helga Pfanner, ¶¶ 32-40; Ms. Pfanner Dep. 13:14, 23:32, Defs.' Ex. 2, ECF 27-2 (May 02, 2022) ("Defs.' Depo. of Ms. Pfanner").

CareCo and Ms. Pfanner had the common business purpose of providing personal care services to clients. Defs.' SMF ¶ 9; Defs.' Answer ¶¶ 8, 10, 19. CareCo denies that Ms. Pfanner was actively involved with the business in 2018 and 2019 when she was ill. Affidavit of Helga Pfanner, ¶¶ 32-40; Defs.' Depo. of Ms. Pfanner at 13:14, 23:32.

### The Secretary's Two Wage and Hour Investigations of Defendants

From November 14, 2015 through March 19, 2016, the Wage and Hour Division of the United States Department of Labor ("Wage and Hour Division") conducted its first investigation of CareCo and Ms. Pfanner ("First Wage and Hour Investigation"). Defs.' SMF

¶11; Bosco Decl. ¶ 3. After performing the First Wage and Hour Investigation, the Wage and Hour Division communicated to Defendants that they owed $65,220.97 in overtime back wages to 103 employees. Defs.' SMF ¶12; Bosco Decl. ¶ 6.

On May 31, 2016, at the conclusion of the First Wage and Hour Investigation, Wage and Hour Division Investigator Kelly Bosco ("Investigator Bosco") met with Ms. Pfanner at CareCo's offices in Waterford, Connecticut. Defs.' SMF ¶ 26; Bosco Decl. ¶ 7. An accountant and an attorney representing CareCo were also present. Defs.' SMF ¶ 26; Bosco Decl. ¶ 7.  Investigator Bosco discussed with Ms. Pfanner proper compliance with the overtime provisions of the Fair Labor Standards Act, explaining to Pfanner during this meeting that live-in home care employees must be paid time and one-half their regular rates of pay for all hours worked over 40 per week, and must be paid for all hours worked. Defs.' SMF ¶27; Bosco Decl. ¶ 7; Pfanner Depo. 119:12–120:4.

From March 24, 2018 through May 30, 2019, the Wage and Hour Division conducted its second investigation of CareCo and Pfanner ("Second Wage and Hour Investigation"). The Second Wage and Hour Investigation focused on compliance with the Fair Labor Standards Act with respect to live-in employees. Defs.' SMF ¶11; Bosco Decl. ¶ 3.

DOL concluded, in the course of conducting the Second Wage and Hour Investigation, that the Wage and Hour Division requested and received payroll records from Defendants covering the time period in question, March 24, 2018 to May 30, 2019. *Id.* ¶13. The payroll records can be founded attached as Exhibit 1 to the Bosco Declaration. Bosco Decl. ¶ 8. CareCo has determined that these payroll records do contain some errors. *See* Affidavit of Helga Pfanner, ¶¶ 41-47.

Within that same investigation and time period, DOL concluded that the Wage and Hour Division also requested and received from CareCo's timesheets recording the times that the employees at issue punched in and punched out for work, covering the time period from March 24, 2018 to May 30, 2019. Bosco Decl. ¶ 9. CareCo has determined that these timesheet records do contain some errors. *See* Affidavit of Helga Pfanner, ¶¶ 41-47.

DOL's Wage and Hour Division created a set of Excel spreadsheets in which it utilized the daily punch-in and punch-out times listed on the timesheets it had received to derive and express a weekly hours worked figure for each employee. *Id. ¶*16; Bosco Decl. ¶ 9. The Wage and Hour Division also converted, in some places, military time stated on the timesheets to standard time. *Id.* DOL's Wage and Hour Division compared the hours worked set out in the payroll records to hours worked in the corresponding week to determine whether there were unpaid overtime hours worked shown on Defendants' records. *Id.* CareCo has determined that these excel spreadsheets/calculations do contain some errors. *See* Affidavit of Helga Pfanner, ¶¶ 41-47.

DOL's Wage and Hour Division determined that there were unpaid overtime hours worked apparent on face of Defendants' records from the Wage and Hour Division's comparison of the payroll records. Defs.' SMF ¶ 18; Bosco Decl. ¶ 9. Specifically, the DOL's Wage and Hour Division determined that, in a number of instances where an employee worked over 40 hours in a workweek, the hours worked as set out on the timesheets for the employee (transcribed to the Excel spreadsheets) was greater than the hours worked set out in the payroll documents for the employee for same workweek, revealing that not all hours worked were compensated. *Id.* ¶ 19. Defs.' SMF at 19; Bosco Decl. ¶ 11. CareCo has determined that these excel spreadsheets/calculations do contain some errors. *See* Affidavit of Helga Pfanner, ¶¶ 41-47.

For each such instance in which the hours worked shown on the Excel spreadsheets are greater than the hours worked shown on the payroll for an employee for the same workweek, and the Excel spreadsheets show the employee worked over 40 hours that week, the DOL Wage and Hour Division calculated the time-and-one-half overtime back wages owed to such an employee. *Id.* at 20. Defs.' SMF at 20; Bosco Decl. ¶ 12. The DOL's Wage and Hour Division first subtracted from the hours worked the amount shown on the Excel spread sheets the lesser hours worked amount shown on the payroll documents for the employee in the same workweek, to determine the number of uncompensated hours worked for the employee for that workweek and to calculate the back wages owed. Defs. SMF at 21; Bosco Decl. ¶ 12. The DOL's Wage and Hour Division then multiplied the uncompensated hours worked by the time-and-a-half overtime premium rate of pay for the employee, which was derived by multiplying the employee's regular rate of pay set forth on the payroll records by 1.5, to arrive at the overtime back wages for that employee for that workweek. Defs. SMF ¶ 22; Bosco Decl. ¶ 12. CareCo has determined that these excel spreadsheets/calculations do contain some errors. *See* Affidavit of Helga Pfanner, ¶¶ 41-47.

DOL provided the following as examples where the hours worked shown on the timesheets, are greater than the hours worked shown on the payroll for an employee for the same workweek:

a. For week ending May 18, 2018, the Excel spreadsheet shows that employee Sifaye Aidara worked 74 hours, by adding up the daily time entries for that week. The payroll corresponding to that week shows that the employee was paid for 62 hoursrevealing 12 unpaid hours.

b.  For week ending June 16, 2018, the Excel spreadsheet shows that employee Kristina

Wollen worked 49.25 hours, by adding up the daily time entries for that week. The payroll corresponding to that week shows that the employee was paid for 48 hours revealing 1.25 unpaid hours.

      c. For week ending December 1, 2018, the Excel spreadsheet shows that employee Linda Boateng worked 73.75 hours, by adding up the daily time entries for that week.The payroll corresponding to that week shows that the employee was paid for 68.75 hoursrevealing 5 unpaid hours.

      d. For week ending March 2, 2019, the Excel spreadsheet shows that employee Loeinah Tihobolo worked 80.25 hours, by adding up the daily time entries for that week/. The payroll corresponding to that week shows that the employee was paid for 77 hoursrevealing 3.25 unpaid hours. Defs. SMF at 23; Bosco Decl. ¶ 13.

      CareCo disputed the accuracy of the DOL payroll examples provided and in turn provided the following examples:

          a.   Sifaye Aidara

      For the week-ending on May 19, 2018, Sifaye Aidara punched for 74.25 hours, but was paid for 77 hours, not 62 as alleged by the DOL.

          b.   Krisrtina Wollen

      For the week-ending June 16, 2018, Ms. Wollen punched for 49.25 hours and was paid for 48.  However, for the audited period she punched 2070:57 hours and was paid for 2073.25 hours, for an overpayment of 2.68 hours.

          c.   Linda Boateng

      For the week-ending December 1, 2018, Linda Boateng did punch for 73.75 hours and was paid for 68.75.  However, the schedule shows that on 11/30/18 Clara Balogun relieved

Ms. Boateng at 1 p.m.  As a result, Ms. Boateng was not properly punched out.

       d.   Loeinah Tihobolo

For the week-ending March 2, 2019, Ms. Tihobolo punched 80.25 hours and was paid for 77 hours. However, for the week-ending February 23, 2018 she was paid for 20 hours when she only worked 16.75 hours. Defs.' SMF at 23; Affidavit of Helga Pfanner, ¶¶ 41-46.

The DOL's Wage and Hour Division added to the face of the records overtime back wages described above an equal amount in liquidated damages for each of the affected employees. Defs.' SMF at 24; Bosco Decl. ¶ 14. 'CareCo has determined that these excel spreadsheets/calculations do contain some errors. *See* Affidavit of Helga Pfanner, ¶¶ 41–45, 47– 48, 49–51. CareCo claimed to have acted with good faith in comply with the Act. *Id.* To the extent there were errors, Careco claims that they were due to negligence. *Id*

The DOL's Wage and Hour Division concluded that prior to the second investigation, CareCo did not make any efforts to determine whether its payment in certain workweeks of fewer hours than listed on CareCo's timesheets conformed to the requirements of the FLSA. Defs.' SMF at 25; Defs.' Obj. and Resp. to Pl.'s First Set of Interrogatories & Requests for Produc. of Docs, Resp. to Interrogatory No. 11  (Attachment C hereto at 6), ECF 24-2 (April 01, 2022). Defendants claim only to have installed a new time-keeping system and directed employees not to work off the clock. *Id.*

CareCo concluded that following the 2016 Audit, the company took steps to develop practices and procedures for employees to report the time they are working, which included:

       a. Implementing the telephony system for employees to call in their work time;

       b. Instructing employees not to work off-the-clock;

       c. Instructing employees to call in any time that they got up at night after they punched out

of the day and developed forms for the office staff to process those calls so that the payroll could be correct; and

d. Having a staff member call employees who failed to punch in or out to determine their work hours, prepare the payroll, and review the payroll. Defs.' SMF at 25; Affidavit of Helga Pfanner, ¶¶ 23, 25; Defs.' Depo. of Ms. Pfanner at 73-74.

Furthermore, in 2018 and 2019, Taylor Lloyd was employed to ensure that the payroll was complete and correct. *Id.* ¶27. Ms. Lloyd was responsible for contacting employees who failed to punch in or out in order to ascertain the time they worked. At the time, Ms. Lloyd appeared to be performing her job properly. *Id.*

### B.  Procedural History

On March 23, 2021, Secretary filed a Complaint. Compl.

On April 29, 2021, Secretary filed an Amended Complaint. Amended Complaint, ECF No. 12 (Apr. 29, 2021) ("Am. Compl.").

On May 14, 2021, Defendants filed an Answer to Secretary's Amended Complaint. Defs.' Answer.

On April 01, 2022, Secretary moved for partial summary judgment. Pl. Mem.

On May 02, 2022,  Defendants filed their opposition to Secretary's motion for partial summary judgment. Def. Resp. to Pl. Mem, ECF No. 26 (May 02, 2022) ("Defs. Opp'n.").

On May 16, 2022, Secretary filed her reply to Defendants' response to Secretary's motion for  partial summary judgment. Pl.'s  Reply to Def. Resp. to Pl. Mem.., ECF No. 28 (May 16, 2022) ("Pl. Reply").

## II.    STANDARD OF REVIEW

### A.  Motion for Summary Judgment

A court will grant a motion for summary judgment if the record shows no genuine issue as to any material fact, and the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986). The non-moving party may defeat the motion by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id*. at 247–48.

"[T]he substantive law will identify which facts are material." *Id*. at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*.; *see Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("[M]ateriality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." (citing *Anderson*, 477 U.S. at 248)).

"The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the nonmoving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated

speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (internal citation omitted).

The party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id*. "If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." *Anderson*, 477 U.S. at 250 (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968); *Dombrowski v. Eastland*, 387 U.S. 82, 87 (1967)).

When deciding a motion for summary judgment, a court may review the entire record, including the pleadings, depositions, answers to interrogatories, admissions, affidavits, and any other evidence on file to determine whether there is any genuine issue of material fact. *See* Fed. R. Civ. P. 56(c); *Pelletier v. Armstrong*, No. 3:99-cv-1559 (HBF), 2007 WL 685181, at *7 (D. Conn. Mar. 2, 2007). In reviewing the record, a court must "construe the evidence in the light most favorable to the non-moving party and to draw all reasonable inferences in [his] favor." *Gary Friedrich Enters., L.L.C. v. Marvel Characters, Inc.*, 716 F.3d 302, 312 (2d Cir. 2013) (internal citation omitted). If there is any evidence in the record from which a reasonable factual inference could be drawn in favor of the non-moving party for the issue on which summary judgment is sought, then summary judgment is improper. *See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

## III.   DISCUSSION

The Secretary moves for summary judgment on the following: (1) CareCo's alleged violations of the overtime provisions of the FLSA; (2) CareCo's alleged liability for liquidated damages equal to any back wages later determined to be owed; and (3) the alleged willfulness of CareCo's FLSA overtime violations Pl. Mem. at 1.

11

The Court will address each of these issues in turn.

### 1.   Liability for Alleged FSLA Overtime Violations

"To establish liability under the FLSA on a claim for unpaid overtime, a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work." *Kuebel v. Black & Decker*, 643 F.3d 352, 361 (2d Cir. 2011). "Under the FLSA, no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." *Lassen v. Hoyt Livery, Inc*., 120 F. Supp. 3d 165, 170 (D. Conn. 2015) (citing 29 U.S.C. § 207(a)(1)) (internal quotations marks omitted).

The Secretary argues that "in this case, there are many instances where the Defendants' own timekeeping and payroll records plainly reveal unpaid hours worked by their live-in employees" and "in these instances Defendants' payroll records show payment for a number of hours worked in overtime workweeks that is less than the overtime work set forth on Defendants' own timesheet. Pl. Mem. at 7. In addition, the Secretary argues that the "Defendants had actual or constructive knowledge of the uncompensated hours worked because they are evident on Defendants' own records." *Id.*]. The Secretary further argues that "[t]here can be no genuine dispute that employees in this case performed work recorded on Defendants' timesheets and Defendants' payroll records show that CareCo did not pay those employees the required overtime premium under the FLSA for each overtime hour worked." *Id.*

Defendants argue that "[t]he DOL's spreadsheet reflecting its audit calculations contains numerous errors," and "many of the individuals named in the complaint have been properly compensated for the time they worked." Defs.' Opp'n at 15. In addition, Defendants argue that

"[t]o the extent that some of the individuals may be owed something, they are owed less than what the DOL claims[,]" and "there are material disputes of fact that preclude summary judgment on the DOL's face-of-records claim." *Id*. Defendants further argue that "there is evidence that some employees did not properly punch out when they were done working, and evidence that the DOL's calculations regarding CareCo's records are inaccurate because of their own errors, failure to consider corrective payments, or failure to consider advanced payment of wages." *Id.* at 16.

In reply, the Secretary argues that "[t]here can be no genuine dispute as to this FLSA violation because CareCo admits in its opposition papers that the company failed to pay all employees for all overtime hours worked. *See, e.g*., Defs.' Opp'n at 7 (ECF No. 26) ("it appears that some errors may have been made," and "[s]ome weeks [employees] were underpaid"); *id*. at 6 ("the records show that most employees did receive the pay due them" (emphasis added)); i*d.* at 13 (admitting to payroll errors); Aff. of Helga Pfanner ¶¶ 29–30, 50–51 (ECF No. 27-1) (admitting to pay errors); Aff. of Brittany York ¶¶ 27, 29 (ECF No. 26-3) (admitting to pay errors)." Pl. Reply at 2. In addition, the Secretary notes that "employee Kristina Wollen worked 49.25 hours the week ending June 16, 2018, but CareCo paid Wollen for only 48 hours that week." *Id.* at 2 (citing Sec'y's Stmnt. Undisputed Facts ¶ 23(b) (ECF No. 23).").

Furthermore, the Secretary notes that "[s]imilarly, employee Loeinah Tihobolo worked 80.25 hours the week ending March 2, 2019, but CareCo paid Tihobolo for only 77 hours that week." *See id.* ¶ 23(d).. The Secretary argues that "CareCo does not []provide facts to show that the company paid Wollen and Tihobolo proper overtime wages for the workweeks above[,]" and "CareCo contends that Wollen and Tihobolo received amounts equivalent to the overtime wages they were owed in those workweeks over the course of years of employment ." Reply Mem. at 3.

The Secretary also notes that "[s]uch payments violate the FLSA because liability for unpaid overtime is incurred by an employer when overtime is not paid by the first payday after the amount of overtime pay can be determined."*Id*; ]*Lupien v. City of Marlborough*, 387 F.3d 83, 89 (1st Cir. 2004) (emphasis in original) [(internal quotations marks omitted)]; *see also Ramirez v. Riverbay Corp*., 35 F. Supp. 3d 513, 528 (S.D.N.Y. 2014) (Koeltl, J.) (setting out "the well-recognized principle that statutory overtime liability accrues when a[n employee] works more than forty hours in a given week and is not paid overtime compensation for those hours on the regular payday following that workweek"); 29 C.F.R. § 778.104 ("The [FLSA] takes a single workweek as its standard . . . ."); *id.* (Payment of overtime wages "may not be delayed for a period longer than is reasonably necessary for the employer to compute and arrange for payment of the amount due and in no event may payment be delayed beyond the next payday after such computation can be made."). *Id.* at 3.

    The Court agrees.

    While an employee who sues for unpaid overtime compensation under the FLSA bears the burden of proving that he performed work for which he was not properly compensated, "[t]he remedial nature of this statute and the great public policy which it embodies . . . militate against making that burden an impossible hurdle for the employee." *Anderson v. Mt. Clemens Pottery Co*., 328 U.S. 680, 686-87 (1946). The FLSA requires employers to maintain accurate records of the hours and wages of their employees. 29 U.S.C § 211(c). In situations where an employer's records are inaccurate or inadequate, "an employee has carried out his burden . . . if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Mt. Clemens*, 328 U.S. at 687. Furthermore, "[i]n meeting the burden under *Mt. Clemens*, [plaintiff] need not present testimony from each underpaid employee; rather, it is well-

14

established that [plaintiff] may present the testimony of a representative sample of employees as part of his proof of the prima facie case under the FLSA." *Reich v. S. New England Telecomms. Corp*., 121 F.3d 58, 67 (2d Cir. 1997).

Here, as the Acting Secretary notes, and this record makes clear, "[t]here can be no genuine dispute that employees in this case performed work recorded on Defendants' timesheets and Defendants' payroll records show that CareCo did not pay these employees the required overtime premium under the FLSA for each overtime hour worked." Pl. Mem. at 7. For example, it is undisputed by Defendants that Ms. Wollen worked 49.25 hours the week ending June 16, 2018, and CareCo  paid her for only 48 hours that week. *See*  SMF ¶ 23(b). Similarly, Ms. Tihobolo worked 80.25 hours the week ending March 2, 2019, but CareCo only paid Ms. Tihobolo for only 77 hours that week. *See id.* ¶ 23(d). Thus, there is no genuine dispute that CareCo failed to pay Ms. Wollen and Tohobolo the overtime wages that CareCo owed to them by their first payday after CareCo determined the amount of overtime pay.

 As the Acting Secretary correctly notes, "[e]ven [if] CareCo [] paid employees compensation a year or more before or after the week when the overtime hours were worked, that practice violated the FLSA as a matter of law." *Id.* Under the law, "[f]or a workweek longer than forty hours, an employee who works in excess of forty hours shall be compensated time and a half for the excess hours." *Lundy v. Catholic Health Sys. Of Long Island Inc.,* 711 F.3d 106, 114 (2d Cir. 2013); *see Ramirez v. Riverbay Corp*., 35 F. Supp. 3d 513, 528 (S.D.N.Y. 2014) (noting that there is "the well-recognized principle that statutory overtime liability accrues when [an employee] works more than forty hours in a given week and is not paid overtime compensation for those hours on the regular payday following that workweek.") (citation omitted); *see also* 29 C.F.R. § 778.106 ("The general rule is that overtime compensation earned

in a particular workweek must be paid on the regular pay day for the period in which such workweek ends.").

As a result, the evidence in this record is more than sufficient to establish liability for a violation of the FLSA's overtime provisions. *Ramirez*, 35 F.Supp.3d at 528; *see id.* ("[S]he accrued hours that were not compensated at the statutorily required overtime rate in at least one given week during which she worked more than forty hours. This is enough to establish liability. Any dispute about damages is not presently before the Court.")

Accordingly, the Court will grant summary judgment on the issue of whether CareCo's failed to pay live-in employees their overtime back wages, as reflected on CareCo's time records.

### 2.  Liability for Liquidated Damages

If an employer violates the FLSA's overtime provisions, that employer can be held liable not just for any overtime back wages due, but also for an equal amount in liquidated damages. Indeed, "[u]nder the FLSA, liquidated damages in an amount equal to compensatory damages are mandatory, unless an employer demonstrates that it has acted in good faith and did not willfully violate the statute." *Jeong Woo Kim v. 511 5th Street, LLC*, 133 F.Supp.3d 654, 666 (S.D.N.Y. 2015) (citing 29 U.S.C. § 216(b), 260).

"The Portal-to-Portal Act, 29 U.S.C. § 251 *et seq.*, which amended the FLSA, affords district courts discretion to deny liquidated damages where the employer shows that, despite its failure to pay appropriate wages, it acted in subjective 'good faith' with objectively 'reasonable grounds' for believing that its acts or omissions did not violate the FLSA." *Barfield v. New York City Health and Hosp. Corp.*, 537 F.3d 132, 150 (2d Cir. 2013). The Second Circuit "has characterized the employer's burden a 'difficult one,' emphasizing that 'double damages [are]

the norm and single damages the exception.'" *Id.* (quoting *Herman v. RSR Sec. Servs.*, 17 F.3d 132, 142 (2d Cir. 1999)) (also citing *Reich*, 121 F.3d at 71.)

To establish the requisite subjective "good faith," an employer must show that it took active steps to ascertain the dictates of the FLSA and then act to comply with them. *Id.* (internal quotation marks and citations omitted).

The Secretary argues that "CareCo has not identified any active steps it took with respect to the face-of-the-records overtime violations discussed above to comply with its obligations under the FLSA." Pl. Mem. at 10. In addition, the Secretary argues that "[p]rior to the Second Investigation, CareCo did not make any efforts to determine whether its payment in certain workweeks of fewer hours than listed on Defendants' own timesheets conformed to the requirements of the FLSA." *Id.* The Secretary notes that "CareCo claims only to have taken the steps of installing a new time-keeping system and directing employees not to work off the clock. SUMF ¶ 25[,] [however,] [t]he installation of a new timekeeping system is not material to or aimed at the violation at issue of CareCo's failure to properly pay employees for all overtime hours worked, as this violation is about the failure to pay for recorded hours worked not the failure to accurately record those hours." *Id.* Furthermore, the Secretary argues that "[CareCo's] apparent directive to employees not to work off the clock is immaterial to the violation at issue in this motion, which is not about hours worked and not recorded but rather about hours recorded and not properly compensated." *Id.*

Defendants argue that "the [Secretary] broadly asserts that there were no steps that CareCo could have taken to act in good faith." (and  "cited no authority that arithmetic or rounding errors constitute a lack of good faith." Def. Opp'n at 21. In addition, Defendants note that "there is evidence that [CareCo] intended to properly pay its employees and took affirmative

steps to ensure that it properly paid employees [] [by] implement[ing] the telephone system for employees to call in their work time; instructed employees not to work off-the-clock; instructed employees to call in any time that they got up at night after they punched out for the day and developed forms for the office staff to process those calls so that the payroll could be correct. *Id.* Furthermore, Defendants note that "[CareCo] had a staff member responsible for calling employees who forgot to punch in or out, preparing the payroll, and reviewing the payroll." *Id.* at 22.

In reply, the Secretary notes "there is no genuine dispute that CareCo took steps with respect to certain aspects of compliance with the FLSA[,]" and "CareCo claims that it started paying employees on an hourly as opposed to daily basis, implemented systems that sought accurately to record hours worked by employees, employed a staff member to call employees who did not punch in or out to ascertain their hours worked, and instructed employees not to work off the clock.." Pl. Reply at 5.

The Secretary argues that "CareCo cannot establish a good faith defense to liquidated damages because the efforts were not tailored to CareCo's face-of-the-records overtime violations at issue here." *Id.* Furthermore, the Secretary argues that "[t]he steps CareCo took toward FLSA compliance were mostly aimed at trying to record hours worked by employees (there was also the change to pay hourly as opposed to daily)[,]" and "[n]one of those steps address the FLSA violation on which the Secretary seeks summary judgment and liquidated damages here—namely, CareCo's failure to pay employees for all recorded hours worked in a workweek." *Id.* at 6. In addition, the Secretary notes that "CareCo's efforts to properly record hours worked are immaterial to whether the company took the requisite active steps with respect

to paying employees for all overtime hours that were in fact recorded, which is the issue here."
*Id.*

The Court agrees.

Here, as stated above, CareCo failed to pay at least one employee for all recorded hours worked in a workweek. Although Defendants made efforts to properly record hours worked, this particular effort does not create a genuine issue of material fact regarding the significant "active step" CareCo did not take: timely pay employees for overtime hours that were recorded in CareCo's own records. *See, e.g., Barfield v. N.Y.C. Health & Hosp. Corp*., 537 F.3d 132, 151 (2d Cir. 2008) (affirming award of liquidated damages where an employer took "active steps" but those steps did not pertain to the FLSA issue at hand)*; Reich.,* 121 F.3d at 72 (finding that liquidated damages were proper even where employer took the step of seeking an opinion letter from the Department of Labor but its inquiry was not sufficiently tailored to the FLSA issue in the case).

Accordingly, the Court will grant summary judgment on the issue of the awarding of an equal amount of liquidated damages, on any overtime back wages owed by CareCo.

### 3.  Willfulness

"An employer willfully violates the FLSA when it 'either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the Act." *Young v. Cooper Cameron Corp*., 586 F.3d 201, 207 (2d Cir. 2009) (quoting *McLaughlin v. Richland Shoe Co*., 486 U.S. 128, 133, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988)). "Mere negligence is insufficient." *Id*. (citing McLaughlin, 486 U.S. at 133, 108 S.Ct. 1677). "The burden is on the employee to show willfulness." *Id. Modise v. CareOne Health Servs., LLC*, No. 3:20-CV-765 (SVN), 2022 WL 16573560, at *14 (D. Conn. Nov. 1, 2022).

The Secretary argues that "there is no genuine dispute that CareCo had knowledge of the overtime violations at issue here since they were evident on the face of Defendants' own records." Pl. Mem. at 12. In addition, the Secretary argues that "therefore, CareCo committed these overtime violations with reckless disregard for whether its pay practices complied with the FLSA." *Id.* Furthermore, the Secretary notes that "CareCo paid its employees the overtime premium required by the FLSA for certain overtime hours worked, which is shown on the face of Defendants' payroll records." *Id.* The Secretary argues that "[t]his fact demonstrates that CareCo was aware of its obligation to pay the FLSA overtime premium, yet failed to do so in the circumstances at issue in this motion [for summary judgment]." *Id.*] Moreover, the Secretary argues that "[t]here is no genuine dispute that Investigator Bosco counseled CareCo about the proper payment of overtime wages to the type of employees at issue here, that the overtime violations at issue are evident on the face of Defendants' records, and that CareCo knew how to pay proper overtime wages for overtime hours worked." *Id.* at 12-13.

CareCo argues that "there is evidence that if credited will demonstrate that CareCo did not willfully violate the Fair Labor Standards Act." Defs.' Opp'n. at 17.  CareCo notes that "[a]ctions under the FLSA are generally subject to a two-year statute of limitation [under] 29 U.S.C. § 255." *Id.*  In addition, CareCo argues that "there is evidence that the company regularly paid employees overtime, but in some instances there may have been errors in processing the payroll. Those errors varied in nature and degree and were not due to a company-wide rule. As such, there is evidence that should be considered at trial to determine whether what statute of limitations applies." *Id.* at 19.

In reply, the Secretary argues that "[t]here is no genuine dispute that CareCo knew it had to pay employees the FLSA overtime premium for all overtime hours worked yet failed to do

so[,]" and "[t]hat failure constitutes a willful violation of the FLSA because CareCo knowingly

failed to pay employees properly for all overtime hours worked or, alternatively, CareCo

'showed reckless disregard for the matter of whether its conduct was prohibited by the statute.'

Pl. Reply at 6 (citing *Herman v. RSR Sec. Servs., Ltd.*, 172 F.3d 132, 141 (2d Cir. 1999) (quoting

*McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988)))." In addition, the Secretary argues that

"there is no genuine dispute that CareCo did not pay employees [Ms.]Wollen and  [Ms.]Tihobolo

in accordance with the FLSA for overtime hours recorded on CareCo's own time records[,]" and

"[t[hat failure is not a result of mere 'rounding' or 'arithmetic' errors as CareCo argues." Pl.

Reply at 7 (citations omitted). The Secretary argues that "CareCo's failure to pay for all recorded

overtime hours, in the wake of the Secretary's guidance to CareCo about that very issue,

constitutes a reckless if not knowing violation of the FLSA." *Id.*

 The Court agrees.

 As stated above, there is no genuine dispute that CareCo had knowledge of the overtime

violations at issue, which were evident on the face of Defendants' own records. In addition, "a

representative of the Secretary explained to Ms. Pfanner that Defendants had to pay live-in

employees, the type of employee at issue in this case, one and one-half times their regular rates

of pay for all hours worked over 40 per week and that Defendants also had to pay those

employees for all hours worked." Pl. Reply at 6.Defendants obtained specific instruction from a

representative of the Secretary and still failed to pay employees, such as Ms. Wollen and Ms.

Tihiblo, correctly according to CareCo's own overtime hour records. *See*  SMF ¶ 23(b), (d); *Cf.*

*Doo Nam Yang v. ACBL Corp., 427 F. Supp.* 2d 327, 337 (S.D.N.Y. 2005) (finding willfulness

where the defendant "repeatedly stated that he knew he was required to pay the overtime

premium" but failed to do so).

Thus, CareCo knowingly failed to pay employees properly for all overtime hours worked and in turn "showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Herman*., 172 F.3d  at 132, 141 (2d Cir. 1999).

Accordingly, the Court will grant summary judgment as a matter of law for CareCo willfully failing to pay its employees. As a result, the three-year statute of limitations shall apply, making the relevant time period under the FLSA, three years before the filing of this lawsuit.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's partial motion for summary judgment is **GRANTED** as to (1) whether CareCo violated the FLSA's overtime provisions of the FLSA, based on CareCo's own records; (2) whether CareCo is liable for liquidated damages on any of the back wages later determined to be owed, based on CareCo's own records; and (3) whether CareCo's FLSA overtime violations were willful**.**

The Court will issue a separate order regarding a schedule for the resolution of any remaining issues in this case.

**SO ORDERED** at Bridgeport, Connecticut, this 31st day of March, 2023.

   /s/ Victor A. Bolden
Victor A. Bolden
United States District Judge